Judith A. Lockhart, Esq.
Michael H. Bauscher, Esq.
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, New York
Tel.: (212) 732-3200
Lockhart@clm.com
Bauscher@clm.com

*Attorneys for Respondent Hydro Syntec Chemicals, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ASTRA OIL COMPANY LLC, | : |
| Petitioner, | : Civil Action No. 13-CV-8395-ALC |
| v. | : |
| HYDRO SYNTEC CHEMICALS, INC., | : Filed Electronically |
| Respondent. | : |

**MEMORANDUM OF LAW IN OPPOSITION TO PETITIONER'S PETITION TO**
**CONFIRM FINAL ARBITRAL AWARD**

Respondent Hydro Syntec Chemicals, Inc. ("Respondent" or "Hydro"), by its attorneys Carter Ledyard & Milburn LLP, submits this memorandum of law and accompanying affidavit of David Tsang dated January 23, 2014 (the "Tsang Affidavit") in opposition to the petition of Astra Oil Company LLC ("Astra") to confirm a final arbitral award pursuant to 9 U.S.C. § 9. For the reasons set forth below and in the Tsang Affidavit, Hydro respectfully requests that the Court deny Astra's petition to confirm the arbitral award and that the Court vacate the arbitral award pursuant to 9 U.S.C. § 10(a) on the ground that the arbitrators exceeded their powers in rendering a final award because there was no binding and enforceable agreement to arbitrate.

## Facts

The initial document that Astra refers to as a contract is a "Purchase Confirmation" that was unilaterally prepared by Astra and sent by email to Hydro's broker Kevin Callahan on September 7, 2012. Although that email to Mr. Callahan, which attached the Purchase Confirmation, requested confirmation of the purported contract, Hydro never confirmed receipt of the contract, let alone agreed to any of its terms. Notably, the Purchase Confirmation did not even contain an arbitration provision. Moreover, the Purchase Confirmation required Astra to make payment to Hydro within 30 days, which Hydro never received. *See* Tsang Affidavit ¶ 3.

The second document that Astra refers to as a contract is a document entitled "Agreement for Sale and Purchase of Benzene," which was emailed to Mr. Callahan by Astra on October 22, 2012. Although this purported contract contains an arbitration provision, it does not appear to have ever been signed by Astra or Hydro, and Mr. Tsang, Hydro's Chief Operating Officer, has seen no emails from anyone at Hydro acknowledging receipt of the agreement or accepting any of its terms. *See* Tsang Affidavit ¶ 4 and Exhibit A.

1

7350872.1

The basis for Astra's position that Hydro and Astra reached an agreement containing an arbitration provision appears to be an e-mail from Mr. Callahan to Astra, dated October 23, 2012, in which he states that he is "ok, with the book but if I may suggest the effective date the 26th. Let me know if you are ok with the date." *See* Tsang Affidavit ¶ 5 and Exhibit B.

Mr. Callahan's email was in response to an email from Astra asking for "acceptance of the above book out/title transfer by return email." The referenced "above book out" described in Astra's email only included the gallons, the product, the location and the effective date. It was silent as to price. *See* Tsang Affidavit ¶ 6 and Exhibit B.

Moreover, Mr. Callahan's October 23, 2012 email to Astra refers only to the referenced book-out, it does not relate back to the Purchase Confirmation that was previously sent to Mr. Callahan on September 7, 2012. The Purchase Confirmation references an actual delivery of product and identifies the quantity in barrels, rather than gallons, and bears an effective date of October 22, 2012, rather than the book-out effective date of October 23, 2012. Indeed, in the parties' industry, a book-out contract stands on its own, as a separate contract. *See* Tsang Affidavit, ¶ 7.

Notably, Astra's email regarding the book-out does not identify the price of the book-out, nor does it evidence any agreement to payment terms, method of payment, or arbitration. There was never an agreement to any terms other than the few terms listed in Astra's email. *See* Tsang Affidavit, ¶ 8 and Exhibit B.

## Argument

The question of arbitrability is "an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotations omitted). Thus, in the absence of clear and unmistakable

2

evidence to the contrary, a party opposing the confirmation of an arbitration award may seek

judicial review of the question of arbitrability. *See First Options of Chicago, Inc. v. Kaplan*, 514

U.S. 938 (1995). The Second Circuit has held that the "'[q]uestion[ ] of arbitrability is a term of

art covering 'dispute[s] about whether the parties' are bound by a given arbitration clause' [i.e.,

formation] as well as 'disagreement[s] about whether an arbitration clause in a concededly

binding contract applies to a particular type of controversy' [i.e., scope]." *Republic of Ecuador v.

Chevron Corp.*, 638 F.3d 384, 393 (2d Cir. 2011) (quoting *Howsam*, 537 U.S. at 84).

Accordingly, this Court has proper jurisdiction to determine whether the parties ever reached an

agreement that bound them to arbitration and, if so, the proper scope of any such agreement.

As one Southern District court has held, arbitration "is purely a matter of contract, and a

party cannot be required to submit a dispute to arbitration unless he has agreed to do so."

*Creative Securities Corp. v. Bear Sterns & Co.*, 671 F. Supp. 961, 965 (S.D.N.Y. 1987).

Notably, there is no evidence of a signed contract between Astra and Hydro. Instead, the

arbitrators relied upon certain emails between the parties to find that a binding contract had been

formed. *See* Final Award dated November 21, 2013 (attached as Exhibit A to Astra's petition)

("Final Award"), pp. 2-3.

Under New York law, "[t]o create a binding contract, there must be a manifestation of

mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to

*all material terms*." *Express Indus. & Terminal Corp. v. NYS Dep't of Transp.*, 93 N.Y.2d 584,

589 (1999) (emphasis added). Moreover, "no contract can be created where a material element

has been left for future negotiations." 22 NY. JUR. 2D *Contracts* § 19, pp. 41-42. For example,

in *Sannon-Stamm Assocs., Inc. v. Keefe, Bruyette & Woods, Inc.*, 96 A.D.3d 630 (1st Dep't

2012), the First Department held that there was no binding contract because there was no mutual

assent to proposed "fee-payment terms." *Id.* at 631. In that case, defendant responded to plaintiff's proposed fee-payment terms by sending an email stating "Lets discuss next week," which the First Department found to be insufficient to establish requisite assent to material terms. *Id.*

Similarly, in this case the Final Award indicates that between October 2012 and January 2013, Astra and Hydro continued to negotiate the method and terms of payment, and in fact never reached an agreement on those material terms prior to Astra commencing its arbitration proceeding in New York. *See* Final Award, pp. 2-3 (arbitrators explain that Hydro sent multiple emails to Astra advising that Hydro was still having internal discussions about a final method and terms of payment and that no final payment plan was ever agreed upon); *see also* Tsang Affidavit ¶¶ 5-8 (stating that Hydro and Astra never agreed to final payment terms for the book-out at issue). As in *Sannon-Stamm Assocs.*, these emails indicate that future negotiations were required before Astra and Hydro could have agreed to all material terms necessary to form a binding agreement. In short, the arbitration panel's recitation of the facts describes a scenario considered by New York courts to have been short of an agreement on material terms and thus the parties never entered into a binding agreement.

Moreover, the book-out itself is a standalone contract in the parties' industry (*see* Tsang Affidavit ¶ 7) and thus should be analyzed independent from any purported agreements that came before it. Simply put, the email exchange between Astra and Hydro related to the book-out contains no agreement to arbitrate, and is silent as to the material terms of price and method of payment. *See* Tsang Affidavit ¶ 8. Absent a binding agreement on the book-out, there can be no agreement to arbitrate.

Accordingly, because the parties never formed a binding agreement, the arbitration provision relied upon by Astra and the arbitration panel is not enforceable and the Final Award is subject to vacatur because the arbitrators exceeded their powers in rendering an award when there was no binding and enforceable agreement requiring the parties to arbitrate their dispute.  9 U.S.C. § 10(a).

## CONCLUSION

For the reasons set forth above and in the accompanying Tsang Affidavit, Respondent respectfully requests that the Court deny Astra's petition to confirm the Final Award and that the Court vacate the Final Award pursuant to 9 U.S.C. § 10(a).

Dated: January 23, 2014
        New York, New York

                                    CARTER LEDYARD & MILBURN LLP


                                    By:  ___/s/ Judith A. Lockhart_____
                                         Judith A. Lockhart
                                         Michael H. Bauscher
                                    2 Wall Street
                                    New York, New York 10005
                                    Tel.: (212) 732-3200
                                    Lockhart@clm.com
                                    Bauscher@clm.com

                                    *Attorneys for Respondent,*
                                    *Hydro Syntec Chemicals, Inc.*

5

7350872.1