UNITED STATES DISTRICT COURT           ECF

SOUTHERN DISTRICT OF NEW YORK          13 Civ. 8395 (ALC)

---

ASTRA OIL COMPANY LLC,

                          Petitioner,

- against -

HYDRO SYNTEC CHEMICALS INC.,

                          Respondent.

---

PETITIONER'S REPLY MEMORANDUM IN SUPPORT OF ITS ORDER TO SHOW
CAUSE APPLICATION TO CONFIRM AN ARBITRAL AWARD


CICHANOWICZ CALLAN KEANE
VENGROW & TEXTOR, LLP
Attorneys for Petitioner
61 Broadway 3000
New York, NY 10006
(212) 344-7042

## INTRODUCTION

This reply memorandum of law is submitted on behalf of petitioner ("ASTRA") in further support of its order to show cause application to confirm a New York arbitral award in its favor.

## THE FACTS

1. As appears from the sales confirmations described below, ASTRA and HSC were parties to two transactions--each calling for the purchase/sale of 20,000 bbls. of benzene.

    (a) In the first transaction (Sept. 7, 2012), HSC was the seller and ASTRA was the buyer. The price was $4.16/gal. totaling $3,494.400.00.

    (b) In the second transaction (Oct. 22, 2012), the parties switched hats. ASTRA was the seller and HSC was the buyer. Due to a rising benzene market, the price was $5.35/gal. totaling $4,494,00.00.

2. Both transactions were reduced to written confirmations (hereafter, "1ST CONFIRMATION" and "2ND CONFIRMATION," respectively) emailed by ASTRA's Houston trader Mr. Walker to the HSC Houston trader, Mr. Kevin Callahan. HSC never denied receipt of or objected to either confirmation.

3. The 1ST CONFIRMATION contained at Clause No. 2 making contingent provision for a "book out" [1]("In the event of a book out, inventory transfers document shall be the quantity document of record."). It contained no arbitration or other forum selection provision.

4. The 2ND CONFIRMATION contained two relevant provisions:

---

[1] A book out is simply an offset or financial settlement by which two parties--each with delivery obligations to the other--satisfy those obligations by payment of the difference between the two purchase prices to the party entitled to the higher amount. No cargo physically changes hands. *Transnor (Bermuda) Ltd. v. BP No. Amer. Petr.*, 738 F.Supp. 1472, 1491 (S.D.N.Y. 1990).

1

(a) An identical contingent provision for a "book out." And,

(b) At Clause No. 16 providing for arbitration of "any and all differences and disputes of whatsoever nature arising out of this contract."

5. The price differential between the benzene to be delivered by HSC ($3,494,400) and that to be delivered by ASTRA ($4,494,400) was *about* $1 million in ASTRA's favor.

6. On Oct. 22, 2012, ASTRA requested a book out of the two transactions to which HSC agreed. The agreed upon sum was $999,600.00. For payment purposes, HSC asked only that the effective date of the book out be postponed from Oct. 22 to Oct. 26, 2013 in order to delay payment.

7. On Nov. 1, 2012, ASTRA issued a book out invoice to HSC for $999,600.00.

8. HSC never disputed: (a) the agreement to book out; (b) the existence of the 2ND CONFIRMATION on which the book out was partly based; or (c) the book out invoice sent it by ASTRA. The email exchanges between the parties were limited to whether HSC would pay the book out amount in cash or by letter of credit. HSC requested the option to pay by letter of credit. Astra agreed.

9. HSC never paid the book out.

## ARGUMENT

### A. DISPOSITION OF THIS CASE

10. Where the making of an arbitration agreement is *genuinely* at issue, the question is resolved at a trial. Otherwise the disposition is summary, [9 U.S.C. 4.], and the petition is treated like a summary judgment motion. See, *Garanti Finansal Kiralama A.S. v. Aqua Marine and Trading Inc.*, 697 F.3d 59, 63-64, 72-74 (2d Cir. 2012).

2

11. Using summary judgment standards, if the petitioning party makes a sufficient showing, the opposing party (here HSC) must come forward with specific counter-evidence. It is not enough for it to show some metaphysical doubt or to rely on conclusory allegations or unsubstantiated speculation. *Brown v. Eli Lilly and Co.*, 654 F. 3d 347, 358 (2d Cir. 2011). Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight," summary judgment must be granted. *Id.*

B. FORMATION OF THE TWO SALES CONTRACTS

13. Because the two transactions involved the sale of goods, issues of contract formation are governed by Article 2 of the U.C.C. N.Y.U.C.C. 2-201. (The arbitration clause of the 2ND CONFIRMATION makes New York law the law of the contract.)

14. In New York, where two merchants enter into a verbal sales contract, and one of them sends the other a written confirmation, that confirmation ordinarily binds the receiving merchant unless the later objects within a reasonable time. N.Y.U.C.C. 2-207(1-2(c)).

15. HSC admits receipt of the 1ST and 2ND CONFIRMATIONS but denies that it ever acknowledged their receipt, signed, or agreed to them. *HSC's Opp. Aff. Of TSANG, paras. 3-4.* HSC does not say that it sent any objections. Therefore, under U.C.C. 2-207(1-2), its silence sealed those contracts rather than defeated them.

16. Under Art. 2-207(2)(a), a merchant may show, if true, that the offer was expressly limited to its terms thus precluding any additional term such as an arbitration clause from becoming part of the contract even if not objected to. HSC has not shown or alleged any of that.

16. Under Art. 2-207(2)(b), a merchant may also show, if true, that the inclusion of an arbitration clause in the confirmation was an additional term that materially altered the verbal sales contract and also never became part of that contract even if not objected to. However,

3

materiality is a fact issue and the burden of proof falls on the party arguing it. *Aceros Prefabricados, SA v. TradeArbed, Inc.*, 282 F. 3d 92, 99-102 (2d Cir. 2002). HSC has neither alleged nor proved that the arbitration clause was an additional term or material alteration.

C. ARBITRABILITY UNDER THE ARBITRATION ACT - GENERALLY.

    18. Whether a claim is arbitrable involves a two part inquiry.

        (a) *Existence of an Agreement.* Is there an agreement by two parties to arbitrate one or more future disputes? And if so,

        (b) *Scope of the Agreement.* Does the dispute fall within the scope of the arbitration agreement?

*National Union Fire Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996).

    19. In this case, the *existence* of an agreement to arbitrate is determined under the Federal Arbitration Act ("FAA") which provides that:

        (a) The agreement must be in writing. 9 U.S.C. 2.

        (b) It must relate to a transaction involving commerce. *Id.* And,

        (c) Its validity is determined by ordinary contract law. *Id.; Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 404-409 (2 Cir. 1959) (Citations omitted).

    20. Once its existence is established:

        (a) An arbitration clause is to be construed as broadly as possible. *Collins & Aikman Prod. Co. v. Building Sys.*, 58 F.3d 16, 19 (2d Cir. 1995).

        (b) A dispute will be held arbitrable unless it can be said with positive assurance that it does not fall within the scope of the clause. *Thomas James Assocs., Inc. v. Jameson*, 102 F.3d 60, 65 (2d Cir. 1996).

D.  EXISTENCE OF THE SUBJECT AGREEMENT TO ARBITRATE

21. The arbitration clause complies with the FAA in that:

    (a) It is in writing;

    (b) It relates to the purchase/sale of benzene by two merchants which is a commercial transaction; and

    (c) While HSC contests the formation and scope of the 2ND CONFIRMATION, it does not argue that such a sales contract is invalid under ordinary contract law. *Id.*

22. HSC's opposing affidavit of David Tsang contends at para. 4 that the 2ND CONFIRMATION containing the arbitration clause:

    > ... was never signed by Astra or HSC and I have seen no emails from Mr. Callahan [HSC's trader] or anyone else at HSC acknowledging receipt of this contract, let alone acceptance of its terms.

23. The result under the FAA is the same as under N.Y.U.C.C. 2-207. Under the FAA, an agreement to arbitrate only needs to be in *writing*, it does not have to be *signed*. E.g., *Fisser v. International Bank*, 282 F.2d 231, 233 (2d Cir. 1960); *Ocean Industries, Inc., v. Soros Associates International, Inc.*, 328 F.Supp. 944, 947 (S.D.N.Y. 1971).

24. In any event, Mr. Tsang's conclusory allegation above is non-probative and insufficient under Rule 56 in that:

    (a) He omits any showing as to the nature or sufficiency of HSC's records retention system.

    (b) He does not say that any search was made. Given his statement that he was not initially involved in the matter and had to get his information

5

second hand [*id. at para. 2*], his bare disclaimer of knowledge is not evidence, specific or otherwise, that such emails (or other communications or internal writings) never existed.

 (c) Although Mr. Tsang says he had discussions with HSC's trader (Mr. Callahan) and others about this matter, he points to no denials by any of them--either by way of their opposing affidavits or even hearsay.

 (d) Read carefully, his contention at para. 4 is *not* that HSC never *received* the 2ND CONFIRMATION, he says only that HSC never *signed* or *affirmatively acknowledged* its receipt or acceptance.

25. In any event, under the U.C.C., a contract need not be signed or specifically accepted in writing. Acceptance can be by conduct. N.Y.U.C.C. 2-204(1); 2-207(3). In this case, HSC acted at all times as if the 2ND CONFIRMATION were binding on it in that:

 (a) HSC accepted the book out--i.e., it agreed to offset the 1ST CONFIRMATION against the 2ND CONFIRMATION—and for payment day, HSC asked only that the effective date of the book out be postponed four days.

 (b) HSC agreed in emails to the book out amount to be paid ASTRA.

 (c) HSC accepted the ASTRA book out invoice without protest.

 (d) The correspondence between the two parties was limited to whether the book out payment would be by cash or letter of credit.

 (e) HSC's Mr. Tsang does not allege any understanding or course of dealing between the parties that limited the manner of acceptance.

6

(f) Mr. Tsang does not allege that HSC protested or objected to the 2ND CONFIRMATION it received.

It is difficult to imagine how could there have been a book out of the delivery obligations under the 1ST and 2ND CONFIRMATIONS--*or even negotiations on the subject*--if HSC had not knowingly accepted the 2ND CONFIRMATION containing the arbitration clause.

25. Moreover, where a party, without protest, accepts the benefits of a contract containing an arbitration clause, it is estopped to deny the binding effect of the clause. *Thomson-CSF, SA v. American Arbitration Ass'n,* 64 F. 3d 773, 778 (2d Cir. 1995). In this case, the 2ND CONFIRMATION containing the arbitration clause gave HSC the *right* to receive 20,000 bbls. of benzene from ASTRA. It used that right/benefit to offset its *obligation* to deliver 20,000 bbls. of benzene to ASTRA under the 1ST CONFIRMATION.

E. SCOPE OF THE SUBJECT AGREEMENT TO ARBITRATE

26. The dispute here is whether HSC agreed to the book out of $999,600 payable to ASTRA. HSC takes the position that any book out would have been an agreement separate and independent of the 2ND CONFIRMATION containing the arbitration clause. Thus, if negotiations for a book out failed or the book out was breached, that would not implicate the 2ND CONFIRMATION's agreement to arbitrate. We disagree for the following reasons.

27. The 2ND CONFIRMATION's arbitration clause covers, "Any and all disputes arising out of this contract ... ." That means:

(a) The Clause 16 arbitration provision a broad arbitration clause. *JLM Industries, Inc. v. Stolt-Nielsen SA,* 387 F. 3d 163, 172 (2d Cir. 2004).

(b) Where the arbitration clause is broad one, it is presumed to apply to disputes beyond the particular provisions of the underlying contract. If the

7

allegations underlying the claims touch matters covered by the parties' contracts, then those claims must be arbitrated. *Id.; Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir.1995).

(c) Even if it constitutes an existing or potential 3RD contract, a book out (offset) of the 1ST and 2ND CONFIRMATIONS by its very nature would implicate or touch upon the 2ND CONFIRMATION which:

(i) Determines the delivery obligations to be offset against the 1ST CONFIRMATION, and

(ii) Contains a specific provision at Clause 4 applying to book outs. See, *Louis Dreyfus Negoce SA v. Blystad Shipping*, 252 F. 3d 218, 223-29, (2d Cir. 2001).

(d) Since HSC cites to no competing applicable arbitration or forum selection clause, it cannot be said with "positive assurance" that the book out dispute does not fall within the scope of the subject arbitration clause.

28. HSC's position that the book out contract never came into being because the parties had not agreed to the price or method of payment is a false issue. If the formation or performance of the alleged book out contract touches the 2ND CONFIRMATION containing the arbitration clause, then those issues were for the arbitrators to resolve. *See, para. 27, above.*

29. In any event, ASTRA disagrees with HSC's analysis on the law and on the facts.

(a) On the law:

(i) Because the book out--whether achieved or aborted--involved an offset of the parties' respective delivery obligations for benzene, it, too, is subject to Article 2 of New York's U.C.C. *Architectronics,*

8

*Inc. v. Control Systems, Inc.*, 935 F. Supp. 425, 431-32 (S.D.N.Y. 1996) (New York's Art. 2 covers "transactions in goods" which need not involve a sale or transfer of title).

    (ii)    Under Article 2, it is not necessary to have agreement on all terms for a contract to be enforceable. All that is required is for both parties to intend to be bound, and that the agreement is clear enough for a court to fashion a remedy for breach of the contract. U.C.C. 2-204(3). Since ASTRA and HSC agreed to a book out, the book out price could have been missing (it was not) and the contract would still be valid. U.C.C. 2-305(1).

    (iii)    As to the method of payment, Article 2 assumes cash payment when due unless otherwise agreed. Credit is never assumed. See, 2-310. So, when HSC argues that no method of payment had been agreed on, it essentially admits that ASTRA had not agreed to waive its default right to a cash payment. See also, *Rose v. Spa Realty Assoc.*, 42 N.Y.2d 338, 346, 397 N.Y.S.2d 922, 928 (1977) (Failure to agree expressly on the payment terms does not alone prevent an enforceable agreement).

(b)    On the facts:

    (i)    A book out, by its nature, is an offset of existing delivery obligations by two parties each to the other--the cargo amount and relevant prices are those already provided for in the existing

9

contracts to be offset. *See, p. 2, n. 1, above.* There is nothing to agree on.

(ii) HSC agreed to the ASTRA book out value and made no protest to the book out invoice for that amount.

## CONCLUSION

ASTRA believes no rational finder of fact could find in favor HSC because the evidence to support its case is so slight. *See, para. 11, above.* Therefore the petition should be confirmed.

Dated: New York, NY *Respectfully submitted,*

January 27, 2014 CICHANOWICZ CALLAN KEANE VENGROW
& TEXTOR, LLP
Attorneys for Petitioner

*Of Counsel:*
Joseph De May, Jr. By: _____
JAMES M. TEXTOR