UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASTRA OIL COMPANY LLC, | : |
| Petitioner, | : Civil Action No. 13-CV-8395-ALC |
| v. | : |
| | : Filed Electronically |
| HYDRO SYNTEC CHEMICALS, INC., | : |
| Respondent. | : **Declaration of Sam Wong** |

**SAM WONG** states that the following declaration is true and complete:

1. I was employed as the Purchasing Manager for respondent Hydro Syntec Chemicals, Inc. ("HSC") from October 2009 to December 2012. As Purchasing Manager, I was responsible for various financial matters, including issuance, receipt and review of Letters of Credit. I make this declaration on my own personal knowledge, and if called to testify, I would testify in conformance with this declaration.

2. I am familiar with the particular transactions at issue in the dispute between HSC and Astra Oil Company LLC ("Astra"), as well as HSC's trading procedures for benzene that were in place at the time of those transactions.

3. Under HSC's trading procedures, Kevin Callahan's role as the trader was bringing the basic terms of his proposed trades (and any book-outs of such trades) to Finance and Accounting for review. I would serve as the Finance representative with Swan Corchran serving as the Accounting representative. We would review the payment terms of Mr. Callahan's proposed trades, including in the context of HSC's cash flow and availability of credit with HSBC Bank USA.



7350903.1
DCAPDX_1180534_v1

4. After the completion of our review, we would submit the final terms of the proposed trade to David Tsang, HSC's Chief Operating Officer ("COO"). Mr. Tsang would conduct the final review. If Mr. Tsang decided to authorize a proposed trade, he would convey that authorization to Mr. Callahan, who would then move forward with executing the trade.

5. Mr. Tsang had the sole authority to authorize proposed trades. Thus, in both the particular transactions at issue and generally, Mr. Callahan did not have any authority independent of Mr. Tsang to execute proposed trades or make decisions about their financial terms.

6. The intent behind these procedures was protection of the company by separating trading powers and responsibilities, and keeping the power to authorize the execution of proposed trades in the hands of Mr. Tsang.

7. I never approved the financial terms of any contract for a potential book-out of the particular transactions at issue in this case, nor did Mr. Tsang ever authorize any such book-out.

8. I had discussions with Mr. Tsang about possible ways to reach a book-out agreement with Astra, including by offering Astra a lower price and/or a payment plan supported by a Letter of Credit.

///

///

///

///

///

9. Prior to the end of my employment with HSC, though sought by Astra, no contract for a book-out was ever reached for the particular transactions at issue in this case.

10. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed:     January 29, 2014

_____
Sam Wong