Judith A. Lockhart, Esq.
Michael H. Bauscher, Esq.
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, New York
Tel.: (212) 732-3200
Lockhart@clm.com
Bauscher@clm.com

*Attorneys for Respondent Hydro Syntec Chemicals, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ASTRA OIL COMPANY LLC, | : |
| Petitioner, | : Civil Action No. 13-CV-8395-ALC |
| v. | : |
| HYDRO SYNTEC CHEMICALS, INC., | : Filed Electronically |
| Respondent. | : |

**PERMITTED SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION TO PETITIONER'S PETITION TO CONFIRM FINAL ARBITRAL AWARD**

Respondent Hydro Syntec Chemicals, Inc. ("Respondent" or "Hydro"), by its attorneys Carter Ledyard & Milburn LLP, submits this memorandum of law together with the accompanying affidavit of David Tsang dated January 29, 2014 (the "2nd Tsang Affidavit") and the accompanying declaration of Sam Wong dated January 29, 2014 (the "Wong Declaration") in further opposition to the petition of Astra Oil Company LLC ("Astra") to confirm a final arbitral award pursuant to 9 U.S.C. § 9 and in reply to Astra's attorney declaration of James M. Textor, dated January 27, 2014 (the "Textor Declaration") and reply memorandum of law dated January 27, 2014 (the "Reply Memo"). For the reasons set forth below and in Hydro's opening memorandum of law, the two Tsang Affidavits and the Wong Declaration, Hydro respectfully requests that the Court deny Astra's petition to confirm the arbitral award and instead vacate the arbitral award pursuant to 9 U.S.C. § 10(a) on the ground that the arbitrators exceeded their powers in rendering a final award because there was no binding and enforceable agreement to arbitrate.

## ARGUMENT

Astra's position in support of its petition to confirm the Final Award is rooted in two flawed arguments: (1) that the bookout at issue is not a separate contract from the previous purchase confirmations sent by Astra to Hydro and therefore should be governed by the terms of the second purchase confirmation, but not the first; and (2) that the material terms of the bookout were sufficiently agreed upon by Astra and Hydro. Neither argument is supported by the facts or the law.

**The Bookout is a Separate Contract That Does Not Contain an Arbitration Provision**

Simply stated, and as more fully explained below, the bookout agreement that Hydro is alleged to have breached is a separate agreement that does *not* contain an arbitration provision.[1] Consequently, Hydro had no obligation to participate in the arbitration proceeding instituted by Astra. *See Creative Securities Corp. v. Bear Sterns & Co.*, 671 F. Supp. 961, 965 (S.D.N.Y. 1987) ("a party cannot be required to submit a dispute to arbitration unless he has agreed to do so").

Astra attempts to sidestep the fact that the bookout does not contain an arbitration provision by arguing that "the bookout is simply an administrative matter and . . . not a separate contract" (*see* Textor Declaration ¶ 23) and characterizing it as "simply an offset or financial settlement." Reply Memo, p. 1, n.1 (citing *Transnor (Bermuda) Ltd. v. BP No. Amer. Petr.*, 738 F. Supp. 1472, 1491 (S.D.N.Y. 1990)).

Despite Astra's reliance on *Transnor*, that case actually contradicts Astra's position. The decision specifically states that bookouts "are separate contracts" that parties to original contracts may agree to enter into in order to resolve their obligations under their original agreements. *Transnor*, 738 F. Supp. at 1480 n.5. The court's definition in *Transnor* is consistent with Hydro's understanding that bookout agreements are separate contracts with negotiable prices. *See* Tsang Affidavit ¶ 7; 2nd Tsang Affidavit ¶ 4 (referring to bookout agreements as separate agreements).

In fact, Astra itself refers to the bookout as a separate agreement in its January 25, 2013 letter to Hydro demanding payment. It specifically states that $999,600.00, plus accrued interest, is due to Astra "as the result of the *Bookout Agreement and Confirmation* that was reached

---

[1] The terms of the purported bookout are contained in an email sent on October 22, 2012 from Astra to Hydro. *See* Textor Declaration, Ex.3, p. 2.

2

between Astra and Hydro Syntec Chemicals, Inc. ("Hydra" [sic]) in October 2012." *See* Textor Declaration, Ex. 20 (emphasis added). Astra was quite clear that it was demanding payment specifically under the bookout agreement, which simply did not contain an arbitration provision.

Astra argues that even if the bookout is considered a separate agreement, the arbitration provision contained in the second purchase confirmation should apply because the bookout implicates or touches upon that agreement. *See* Reply Memo, pp.7-8. That argument is nothing more than a self-serving characterization of the facts. To the extent that the bookout implicates or touches upon the second purchase confirmation, it equally implicates or touches upon the first purchase confirmation, which did not contain an arbitration provision. Indeed, the email from Astra setting forth the proposed bookout terms references *both* the first and second purchase confirmations in the Subject line. *See* Textor Declaration, Ex. 3 (p. 2). Astra has provided no explanation for why the second confirmation should apply to the bookout, but not the first, other than the fact that the second confirmation happens to contain an arbitration provision.

The bookout equally touches upon two prior agreements, one with an arbitration provision and one without. Those contradictory agreements cannot be the basis for finding that the parties agreed to arbitrate a dispute under the bookout. It is improper to cherry pick the arbitration provision from the second purchase confirmation while ignoring the fact that the first purchase confirmation contained no such provision, particularly where Astra drafted both. Moreover, given the inconsistent documents exchanged between the parties, there is no basis for finding any consistent custom or practice between the parties that would allow a fact finder to infer the acceptance of an arbitration provision.[2] In fact, out of the four purported agreements

---

[2] For example, after Hydro and Astra both agreed to the first purchase confirmation in September 2012, Hydro sent Astra a formal contract of sale, which also did not contain an arbitration provision. *See* 2nd Tsang Affidavit ¶ 3, Ex. A.

related to this case, only one contains an arbitration provision.[3] Astra could have chosen to specifically provide for an arbitration provision in the proposed bookout terms, but it did not.

In sum, the bookout is a separate contract from the previous two purchase confirmations and it does not contain an arbitration provision. As such, Hydro never agreed to arbitrate any dispute with Astra and the arbitration panel did not have jurisdiction to hear a dispute arising from the bookout. Thus the arbitrators exceeded their powers by rendering an award and the Final Award should therefore be vacated. 9 U.S.C. § 10(a).

### The Parties Did Not Agree to the Material Terms of the Bookout Agreement

Beyond the fact that the bookout does not contain an arbitration provision, the facts show that the parties did not even reach a binding agreement with respect to the contemplated bookout.

As previously explained in the Hydro Memo, the question of whether parties agreed to arbitrate is a matter of ordinary contract law. Hydro Memo, p. 3. Under New York law, "[t]o create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Express Indus. & Terminal Corp. v. NYS Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999). "[N]o contract can be created where a material element has been left for future negotiations." 22 NY. JUR. 2D *Contracts* § 19, pp. 41-42; *see also Sannon-Stamm Assocs., Inc. v. Keefe, Bruyette & Woods, Inc.*, 96 A.D.3d 630 (1st Dep't 2012) (holding that there was no binding contract because the parties did not agree on proposed "fee-payment terms"). Therefore, even if the arbitration provision of the second purchase confirmation somehow applied to the subsequent bookout, it would only be relevant if the parties had actually reached a binding agreement on the bookout. They did not.

---

[3] The four agreements consist of the two purchase confirmations, the contract of sale related to the first purchase confirmation, and the bookout.

Astra argues that the parties reached an agreement on the bookout as a result of Hydro's purported acceptance of the second purchase confirmation. *See* Reply Memo, pp. 3-7. This argument misses the point. Although Hydro disputes that it ever agreed to the second purchase confirmation (*see* Tsang Affidavit ¶ 4; 2nd Tsang Affidavit ¶¶ 3, 5-7), the question at issue here is not whether the parties agreed to the second purchase confirmation, but rather whether they agreed to the *bookout*. The bookout is a separate transaction, which requires the parties to make a new assessment as to whether the proposed bookout terms make financial sense at the time of the proposed bookout, not whether they made sense at the time of the preceding transactions. The market may have changed between the time of the prior transactions and the bookout, and thus the parties must evaluate the terms under current market conditions in order to determine whether to agree to a bookout.

Astra argues that Hydro accepted Astra's offer of a bookout price of $999,600.00 when Mr. Callahan purportedly "post[ed] a letter of credit to the benefit of Astra." Textor Declaration ¶ 23. That is not what happened. Instead, what actually happened was Mr. Callahan referred Astra to Sam Wong (Hydro's Purchasing Manager at the time) to negotiate a proposed letter of credit. *See* Textor Declaration, Ex. 6, p. 3 of 4 (in an email to Astra, Mr. Callahan states "I have copied Mr. Sam Wong in our finance dept[,] he will handle the L/C and coordinate with you"). Mr. Callahan's referral of the financial terms to Mr. Wong is a far cry from actually posting a letter of credit as Astra alleges.

Indeed, Mr. Callahan did not have the authority to give final authorization for the proposed bookout. That authority belonged to Mr. Tsang, who would authorize a trade only after Mr. Wong evaluated and approved the proposed trade's financial terms. *See* 2nd Tsang Affidavit ¶¶ 2-3; Wong Declaration ¶¶ 1-5. Neither Mr. Wong nor Mr. Tsang ever approved the bookout

at issue. *See, e.g.*, Tsang Affidavit ¶ 8; 2nd Tsang Affidavit ¶¶ 4, 3-6; Wong Declaration ¶¶ 7-10. The emails between the parties bear this out.

After receiving the proposed bookout terms, Mr. Wong sent an email to Mr. Callahan, which he asked Mr. Callahan to forward to Astra, stating that "I have been in touch with my colleagues in Asia to resolve the difficulties with this particular trade. The plan is to have something substantive by the beginning of this coming week or sooner." *See* Textor Declaration, Ex. 13, p. 4.[4] Mr. Callahan forwarded Mr. Wong's email to Astra the following day, November 1, 2012. *Id.* at p. 3-4. At that time, 11:54 A.M. to be exact, Astra had notice that Hydro was still considering the proposed bookout and hoped to have a substantive response within a week. Nevertheless, perhaps fearing that Hydro would not agree to the terms, Astra emailed Hydro an invoice for the proposed bookout transaction just a few hours after receiving the email indicating that Mr. Wong was still reviewing and negotiating the financial terms. *See* Textor Declaration, Ex. 7. This is in stark contrast with how Astra handled a bookout transaction with Hydro a year earlier, when it sent a formal confirmation notice together with the invoice, which stated that it was to "confirm the mutual acceptance" of the bookout. *See* 2nd Tsang Affidavit ¶ 5, Ex. B. Under the circumstances, the fact that Astra sent an invoice to Hydro does not change the fact that Hydro never agreed to the proposed terms.

Mr. Wong and Mr. Tsang continued their attempts to salvage a proposed bookout by discussing various financial terms and payment plans both internally and with Hydro's bank. *See* 2nd Tsang Affidavit ¶¶ 5-6. Mr. Tsang advised Astra of Hydro's continued efforts to work out a solution in an email sent on December 7, 2012. Mr. Tsang explained: "We are working on some options with our bank to issue a payment plan with L/C to Astra. It's taken longer than

---

[4] Although Mr. Wong sent his email slightly more than a week after Mr. Callahan sent him the proposed financial terms, Mr. Wong explained in his email that the short delay was caused by his having to deal "with the aftermath of someone close to me passing away."

6

expected. But, I will advise as soon as I receive confirmation." Textor Declaration, Ex. 17 (third page). Hydro was ultimately unable to reach acceptable terms for the proposed bookout. *See* 2nd Tsang Aff. ¶¶ 5-6. Because Hydro and Astra never agreed to the price or payment terms of the proposed bookout, they never formed a binding agreement.[5] In the absence of a binding agreement, there could not have been an enforceable arbitration provision and thus Hydro was not bound to submit to arbitration.

In sum, Astra is attempting to defend an arbitration proceeding involving a dispute that arose from a proposed contract that did not contain an arbitration provision and that never became binding on the parties due to a lack of mutual assent to all material terms. Given those facts, Hydro submits that it was never bound to arbitrate this dispute. Vacating the confirmation award would allow the parties to have their day in court, where a decision on the merits could be reached in the proper forum.

---

[5] Hydro's argument that Article 2 of the New York U.C.C. ("Article 2") allows for these terms to be provided by the court is unavailing. First, although Article 2 would likely apply to the first and second purchase confirmations, which contemplate the actual sale of goods (benzene), it is not clear that Article 2 would apply to the bookout transaction, which does not contemplate the sale of any goods, but rather is a separate paper transaction to settle financial obligations. Second, Astra concedes that Article 2 can only be used to fill in missing terms if the parties otherwise "intend to be bound" by an agreement. *See* Reply Memo, p. 9. As explained above, Hydro did not intend to be bound by the bookout because it was unable to reach acceptable financial terms. Moreover, there is no evidence that Hydro ever intended to be bound by the arbitration provision. *See* 2nd Tsang Affidavit ¶ 7. Article 2 therefore cannot save the purported bookout agreement or serve as a basis for finding that Hydro agreed to arbitrate this dispute.

7

## CONCLUSION

For the reasons set forth above and in Hydro's opening memorandum of law, together with the first and second affidavits of David Tsang and the declaration of Sam Wong, Hydro respectfully requests that the Court deny Astra's petition to confirm the Final Award and that the Court vacate the Final Award pursuant to 9 U.S.C. § 10(a).

Dated: January 29, 2014
     New York, New York

**CARTER LEDYARD & MILBURN LLP**

By:   /s/ Judith A. Lockhart
       Judith A. Lockhart
       Michael H. Bauscher
2 Wall Street
New York, New York 10005
Tel.: (212) 732-3200
Lockhart@clm.com
Bauscher@clm.com

*Attorneys for Respondent,*
*Hydro Syntec Chemicals, Inc.*

8