UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
  ASTRA OIL COMPANY, LLC,              :
                                              :
                               Plaintiff,  :
                                              :      1:13-cv-08395 (ALC)
         -against-                      :
                                              :      **OPINION AND ORDER**
  HYDRO SYNTEC CHEMICALS, INC.,    :
                                              :
                               Defendant.  :
------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

      Petitioner Astra Oil Company, LLC ("Astra") petitioned to confirm an arbitration award rendered against Hydro Syntec Chemicals, Inc. ("HSC") on November 21, 2013. HSC cross-moved to vacate the arbitral award, asserting that the parties had no binding and enforceable agreement to arbitrate. For the reasons set forth below, Astra's Petition to Confirm Arbitration (ECF No. 1) is GRANTED. HSC's cross-motion to vacate the arbitral award (ECF No. 12) is DENIED.

**I.    Background**

      Astra and HSC are Houston based petroleum companies. (Att'y Reply Decl. ¶ 9, ECF No. 14.) This dispute arises from a series of transactions between the parties for the purchase and sale of benzene. (Pet. Confirm Arbitration ¶ 2, ECF No. 1.) On September 6, 2012, HSC sold 840,000 gallons (20,000 barrels) of benzene to Astra at a rate of $4.16 per gallon. (Att'y Reply Decl. ¶ 10, ECF No. 14; Tsang Second Aff. ¶ 3, ECF No. 17.) On October 22, 2012, HSC's trader, Kevin Callahan, agreed to repurchase the same batch of 840,000 gallons (20,000 barrels) of benzene from Astra at the new market rate of $5.35 per gallon. (Att'y Reply Decl. Ex. 1, ECF No. 14-1.) Shortly thereafter, since neither agreement had yet been consummated, Callahan entered

into a bookout agreement with Astra, (Att'y Reply Decl. ¶ 17, ECF No. 14), such that the parties would "offset . . . existing delivery obligations" to each other.  (Pet'r's Reply Mem. ¶ 29(b), ECF No. 15.)  As a result, under the bookout, HSC was required to pay Astra $999,600.[1]  Astra commenced arbitration proceedings when HSC failed to make this payment.  (Pet'r's Reply Mem. ¶ 9, ECF No. 15.)

**Agreement to Arbitrate**

The parties exchanged form contracts for the September 2012 agreement.  (Resp't's Letter dated January 23, 2014, ECF No. 13; Tsang Second Aff. Ex. A, ECF No. 17-1.)  Astra's September 2012 purchase contract number was 63038-4873.  (Resp't's Letter dated January 23, 2014, ECF No. 13; Att'y Reply Decl. ¶ 11, ECF No. 14.)  The first five digits of the contract number uniquely identify the contract, while the last four digits refer to the lot of benzene marked for purchase.  (See Att'y Reply Decl. Ex. 7, ECF No. 14-1 (noting the "LOT" as 4873 on Astra's bookout invoice).)  The parties' form contracts do not differ materially.  (Resp't's Letter dated January 23, 2014, ECF No. 13; Tsang Second Aff. Ex. A, ECF No. 17-1.)  Astra simply e-mailed its contract to HSC as a written confirmation of their agreement, without requesting a signature.  (Resp't's Letter dated January 23, 2014, ECF No. 13.)  HSC, on the other hand, requested a signature on its contract, which was signed by Callahan as the only representative of HSC.  (Tsang Second Aff. Ex. A, ECF No. 17-1.)  Although neither contract was signed by both parties, HSC concedes that the parties did reach an agreement for the sale of 20,000 barrels of benzene to Astra.  (Tsang Second Aff. ¶ 3, ECF No. 17.)  Neither contract, however, includes an arbitration provision.  (Resp't's Letter dated January 23, 2014, ECF No. 13; Tsang Second Aff. Ex. A, ECF

---

[1] The September 2012 contract was valued at $3,494,400 (840,000 gallons * $4.16/gallon).  The October 2012 contract was valued at $4,494,000 (840,000 gallons * $5.35/gallon).  The difference between the two contracts is $999,600 in Astra's favor.

2

No. 17-1.)

HSC challenges the October 2012 agreement. (Tsang Aff. ¶ 4, ECF No. 11.) Astra sent HSC the form contract for the October 2012 agreement via e-mail to Callahan. (Att'y Reply Decl. Ex. 1, ECF No. 14-1.) Astra's sales contract number for this agreement was 84856-4873. (Tsang Aff. Ex. B, ECF No. 11; Att'y Reply Decl. ¶ 16, ECF No. 14.) This form contract included an agreement to arbitrate "any and all differences and disputes of whatsoever nature arising out of this contract." (Att'y Reply Decl. Ex. 1, ECF No. 14-1.) It also contemplated a bookout. (Att'y Reply Decl. Ex. 1, ECF No. 14-1.) HSC claims this contract was never signed by anyone at Astra or HSC, and no one at HSC even so much as confirmed receipt of this contract. (Tsang Aff. ¶ 4, ECF No. 11.) HSC, however, does not dispute that it received the e-mailed form contract from Astra. (See Tsang Aff. ¶ 4, ECF No. 11.) Moreover, on November 9, 2012, Callahan sent HSC's invoice for this agreement to Astra, copying HSC's finance representative, Sam Wong, on the e-mail. (Att'y Reply Decl. Ex. 12, ECF No. 14-1.)

**Bookout Agreement**

On October 22, 2012, Astra requested a bookout of the September and October contracts. (Pet'r's Reply Mem. ¶ 6, ECF No. 15.) Responding to an e-mailed request for confirmation of the bookout from Astra with the subject line "Bookout confirmation/ Astra ref: 63038/84856," Callahan wrote, "I am ok, with the book but if I may suggest the effective date the 26th." (Tsang Aff. Ex. B, ECF No. 11.) Astra accepted the modification. (Tsang Aff. Ex. B, ECF No. 11.) Under this bookout agreement, HSC owed Astra $999,600. (Pet'r's Reply Mem. ¶ 6, ECF No. 15.) On November 1, 2012, Astra issued an invoice for the bookout in that amount and e-mailed it to Callahan and Wong. (Att'y Reply Decl. Ex. 7, ECF No. 14-1.) Neither the initial e-mails confirming the bookout, nor the invoice contained an arbitration provision. (Tsang Aff. Ex. B,

3

ECF No. 11; Att'y Reply Decl. Ex. 7, ECF No. 14-1.)  The parties agreed to a similar bookout in 2011 via an e-mail sent by Astra to Callahan.[2] (Tsang Second Aff. Ex. B, ECF No. 17-2.)

From October 23, 2012, to January 25, 2013, Astra repeatedly reached out to HSC personnel, including Callahan, Wong, and HSC's Chief Operating Officer, David Tsang, to determine the payment arrangement for the bookout.  (Att'y Reply Decl. Exs. 4-20, ECF No. 14-1.)  At no point did Callahan, Wong, or Tsang dispute the amount of the bookout.  (Id.)  For instance, on November 8, 2012, in response to a request from Astra for a status update on the payment for the bookout, Wong wrote, "I met with HSBC yesterday and the LC [letter of credit] application is in process and am awaiting their reply."  (Att'y Reply Decl. Ex. 11, ECF No. 14-1.)  Callahan and Tsang were copied on the e-mail.  (Id.)  Similarly, after several additional requests from Astra for payment, Tsang followed up on December 7, 2012, stating, "We are working on some options with our bank to issue a payment plan with L/C to Astra."  (Att'y Reply Decl. Ex. 17, ECF No. 14-1.)  On January 25, 2013, with payment on the bookout still outstanding, Astra's counsel issued a legal demand letter to HSC.  (Att'y Reply Decl. Ex. 17, ECF No. 14-1.)

**Arbitration Proceedings**

Astra commenced arbitration proceedings in New York on March 12, 2013.  (Order to Show Cause Ex. A, ECF No. 3.)  It appointed the first arbitrator to the panel.  (Id.)  When it did not receive any reply from HSC nearly five months after appointing the first arbitrator, Astra appointed the second arbitrator.  (Id.)  The two arbitrators together appointed the chair of the panel.  (Id.)  The panel set a hearing for September 16, 2013, but postponed the hearing October 22, 2013, when HSC's General Counsel requested an extension.  (Id.)  Nevertheless, HSC did

---

[2] Notably, the parties' agreement under the bookouts in both 2011 and 2012 was limited to the product, quantity, location, effective date, contracts implicated, and parties involved.  No additional terms were specified in the agreement.  (Tsang Aff. Ex. B, ECF No. 11; Tsang Second Aff. Ex. B, ECF No. 17-2.)

not participate in the arbitration proceedings. (Id.) Following the hearing, Astra served the transcript of the hearing upon HSC. (Id.) After still receiving no response, the panel closed the evidentiary phase of the arbitration hearing on November 4, 2013, and rendered its decision on November 21, 2013. (Id.)

## II. Discussion

Astra asks the Court to confirm the arbitral award against HSC. HSC cross-moves to vacate the arbitral award on the grounds that the arbitrators exceeded their authority in rendering an award when there was no binding and enforceable agreement to arbitrate. The Court will first address the threshold issue of arbitrability.

### A. Arbitrability

"Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court . . . ." John Hancock Life Ins. Co. v. Wilson, 254 F.3d 48, 53 (2d Cir. 2001). Issues of arbitrability are resolved using a summary judgment standard, unless there is an issue of fact that necessitates a trial. Syncora Guarantee Inc. v. HSBC Mexico, S.A., 861 F. Supp. 2d 252, 258 (S.D.N.Y. 2012); cf. Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003) (applying a summary judgment standard to a motion to prevent arbitration). Neither party disputes the material facts of the case.[3]

HSC challenges the agreement to arbitrate on four grounds: (1) As a trader, Callahan lacked the authority to bind HSC to the October 2012 agreement or the bookout; (2) HSC never agreed to the additional terms in the written confirmation of the October 2012 agreement; (3) the parties did not reach a binding and enforceable agreement on the bookout because the parties were

---

[3] The statements of fact in the parties' memoranda of law contain no disputed factual issues. Moreover, the parties have provided the Court with the underlying documents on which they base their factual assertions. Therefore, the only outstanding issues are issues of law.

still negotiating price and method of payment; and (4) the disputed bookout agreement did not contain an arbitration clause and is not subject to arbitration on the basis of the arbitration clause in the October 2012 agreement.

### 1. Callahan had the implied authority to bind HSC to the October 2012 agreement and the bookout.

Apparent authority "arises from the 'written or spoken words or any other conduct of the principal which, reasonably interpreted, causes [a] third person to believe that the principal consents to have [an] act done on his behalf by the person purporting to act for him.'" Minskoff v. American Exp. Travel Related Servs. Co., 98 F.3d 703, 708 (2d Cir. 1996). Apparent authority therefore requires proof of two facts: "(1) the principal was responsible for the appearance of authority in the agent to conduct the transaction in question, and (2) the third party reasonably relied on the representations of the agent." Herbert Constr. Co. v. Cont'l Ins. Co., 931 F.2d 989, 993-94 (2d Cir. 1991).

"The existence of apparent authority is normally a question of fact," and therefore inappropriate for resolution using a summary judgment standard. Cf. Minskoff, 98 F.3d at 708 (stating that an issue of apparent authority cannot be resolved on a motion for summary judgment). However, "a principal may be estopped from denying apparent authority if (1) the principal's intentional or negligent acts, including acts of omission, created an appearance of authority in the agent, (2) on which a third party reasonably and in good faith relied, and (3) such reliance resulted in a detrimental change in position on the part of the third party." Id.

HSC alleges that Callahan "did not have authority to actually authorize or finalize any trades." (Tsang Second Aff. ¶ 2, ECF No. 17.) Instead, it states that Callahan's responsibilities were limited to "discuss[ing] the basic terms of a trade . . . . [T]he proposed trade would [then] go to Wong," who examined the payment terms and made payment arrangements. (Tsang Second

6

Aff. ¶ 2, ECF No. 17.)   The proposal was forwarded to Tsang for final authorization, only after which Callahan could "finalize the trade with the buying or selling entity." (Tsang Second Aff. ¶ 2, ECF No. 17.)

The undisputed facts, however, estop HSC from denying that Callahan had the apparent authority to bind it in contracts with Astra.   Callahan was HSC's only trader, and the only individual Astra dealt with when negotiating and finalizing contracts.   He was Astra's primary contact at HSC.   For instance, the undisputed 2011 bookout agreement that HSC helpfully provided was sent only to Callahan at HSC.   Additionally, not only did Callahan exchange e-mails with Astra's personnel negotiating and agreeing to contracts, but when HSC forwarded its form contract for the September 2012 agreement between the parties, Callahan was the sole signatory behalf of HSC.   By authorizing Callahan to be its sole representative on contract negotiations, by ratifying the 2011 bookout and the September 2012 agreement, and by failing to alert Astra to the limited nature of Callahan's authority, HSC created in Callahan the appearance of authority to bind it in contracts with Astra.   The undisputed facts also demonstrate that Astra reasonably relied on Callahan's authority as it continued to deal primarily with Callahan.   That reliance resulted in a detrimental change in Astra's position when Astra took the benzene off the market, thereby foregoing other opportunities to make the sale.   Therefore, Callahan had the apparent authority to bind HSC in contracts with Astra, and HSC is estopped from asserting otherwise.

### 2. The additional terms in the written confirmation of the October 2012 contract became part of the parties' agreement.

HSC contests that, even if Callahan had the authority to agree to the essential terms of a proposed trade, the additional terms in Astra's form contract, including the arbitration provision, become part of the parties' agreement.   HSC argues that although it received Astra's October

7

2012 contract, it was not signed by either party and HSC did not acknowledge its receipt. Furthermore, it opposes the inclusion of the additional terms on the grounds that "given the inconsistent documents exchanged between the parties, there is no basis for finding any consistent custom or practice between the parties that would allow for a fact finder to infer the acceptance of an arbitration provision."

Issues of contract formation in a contract for the sale of goods, such as benzene, are governed by Article 2 of the New York Uniform Commercial Code (N.Y.U.C.C.). N.Y.U.C.C. Section 2-207 governs disputes involving additional terms in written confirmations. "It provides that, as between merchants, additional terms included in a written confirmation become part of the contract unless (1) the offer expressly limits the acceptance to the terms of the offer, (2) they materially alter it, or (3) notification of objection to them is given within a reasonable time." Colorado-Arkansas-Texas Distrib., LLC v. Am. Eagle Food Prods., Inc., 525 F. Supp. 2d 428, 434 (S.D.N.Y. 2007).

"Whether the inclusion of an arbitration clause materially alters the initial agreement is determined on a case-by-case basis with the 'burden of proving the materiality . . . on the party that opposes inclusion.'" Id. "A material alteration is one that would 'result in surprise or hardship if incorporated without express awareness by the other party.'" Id. To prove a material alteration, the party opposing inclusion "must establish that, under the circumstances, it cannot be presumed that a reasonable merchant would have consented to the additional term." Id.

Because HSC and Astra are both merchants, the additional terms in the written confirmation of their October 2012 agreement are binding unless HSC raises one of the above exceptions. HSC has not done so. It has not argued that its offer limited Astra's acceptance to the terms of the offer. Nor has it alleged that it notified Astra of its objection to the inclusion of an

arbitration provision within a reasonable period of time. In fact, it specifically asserted that it did not so much as acknowledge receipt of Astra's e-mailed contract. Lack of acknowledgment of the written confirmation does not constitute an objection. Moreover, HSC expressly ratified the agreement when Callahan issued an invoice against the October 2012 contract, copying Wong on the e-mail.

Finally, HSC has not alleged, and certainly not met its burden to prove, that the additional terms, including the arbitration provision, materially alter the agreement. HSC has not even suggested that the inclusion of the arbitration provision subjected it to "surprise or hardship." As to whether a "reasonable merchant," under the circumstances, would have consented to the inclusion of the arbitration provision, HSC simply stated that the parties' September 2012 contracts do not allow for a finding of "custom or practice" with respect to arbitration clauses in the parties' agreements. But the Court's inquiry is broader and focuses on the mindset of a "reasonable merchant." HSC has not met this burden. Therefore, the additional terms in the written confirmation, including the arbitration clause, are part of the parties' agreement.

### 3. The parties had reached an agreement as to the material terms of the bookout.

HSC disputes Astra's assertion that the parties reached an agreement as to the bookout. HSC points to Astra's e-mail confirmation of the bookout, claiming that the lack of a price term indicates that the parties were still engaged in negotiations as to the material term of price.

As an initial matter, HSC agreed to the proposed terms of the bookout expressly stated in Astra's e-mail when Callahan responded to the e-mail saying, "I am ok, with the book . . . ." The only term Callahan sought to modify was the effective date, to which Astra agreed. Although HSC contends that the price term was negotiable, Astra's e-mailed bookout confirmation, which Callahan accepted, specifically references the contract numbers of the September and October

9

agreements in its subject line.  It is evident, then, that the price term was to be determined by a monetary offset of the two contracts.  The only undecided term, and, in fact, the only issue raised by HSC in subsequent e-mails to Astra, was the method of payment—whether by cash or by letter of credit.  New York does not consider method of payment to be a material term in an agreement. Four Seasons Hotels Ltd. v. Vinnick, 515 N.Y.S.2d 1, 9 (N.Y. App. Div. 1987).  Thus, the parties' e-mail exchanges regarding the bookout evidence their agreement to the bookout transaction.

### 4. The arbitration provision in the October 2012 contract applies to any disputes arising from the bookout.

Finally, HSC challenges the arbitration proceeding on its nonpayment under the bookout agreement because the bookout agreement did not have an arbitration clause.  HSC argues that the bookout is a separate transaction and must be separately negotiated.  It asserts that the lack of an arbitration clause in the bookout agreement is therefore fatal to the arbitration proceeding.  Astra counters that a bookout need not be separately negotiated where it was simply intended to offset the parties' obligations under two prior agreements.  It refers to the bookout as an accounting function.

Federal policy requires the court to "construe arbitration clauses as broadly as possible." Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 19 (2d Cir. 1995).  Therefore, an arbitration proceeding should be upheld "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986).

The arbitration clause in the October 2012 agreement covers "any and all differences and disputes of whatsoever nature arising out of this contract."  (Att'y Reply Decl. Ex. 1, ECF No. 14-1.)  The Court need not decide whether the bookout was a separately negotiated agreement because the parties' dispute concerning the bookout does "aris[e] out of" the October 2012

10

agreement. Not only does the bookout reference this contract, but the resulting payment obligation in Astra's favor is specifically created by this contract. Therefore, the parties' disputed bookout agreement is subject to arbitration.

### B. Petition to Confirm Arbitration Award

"Confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court and the court must grant the award unless the award is vacated, modified, or corrected." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006). "The arbitrator's rationale for an award need not be explained, and the award should be confirmed 'if a ground for the arbitrator's decision can be inferred from the facts of the case.'" Id. "Only 'a barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." Id. The court must enter judgment for the party seeking to confirm the award unless the opposing party shows that the award should be vacated pursuant to grounds listed in 9 U.S.C. § 10(a). Miss Universe L.P. v. Monnin, 952 F. Supp. 2d 591, 599 (S.D.N.Y. 2013).

HSC has not challenged the arbitration proceeding under the grounds listed in 9 U.S.C. § 10(a). The Court finds that the arbitrators' decision is supported by the facts of the case and therefore grants Astra's petition to confirm the arbitral award.

### III. Conclusion

For the reasons set forth above, Astra's Petition to Confirm Arbitration (ECF No. 1) is GRANTED. HSC's cross-motion to vacate the arbitral award (ECF No. 12) is DENIED.

SO ORDERED.

Dated: February 18, 2014
New York, New York

ANDREW L. CARTER, JR.
**United States District Judge**

11